UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORRINDA COOK,

      Plaintiff,                       CASE NO. 10-10016
                                        DISTRICT JUDGE JOHN FEIKENS
                                        MAGISTRATE JUDGE R. STEVEN WHALEN

ST. JOHN HOSPITAL &
MEDICAL CENTER,

      Defendant,
_____/

## **REPORT AND RECOMMENDATION**

Before the Court is Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction and to Amend Complaint [Docket #19], filed June 1, 2010, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the motion for TRO and preliminary injunction be DENIED. I will issue a separate order granting the motion to amend.[1]

### **I. FACTUAL BACKGROUND**

Plaintiff a registered nurse formerly in the employ of Defendant St. John Hospital and Medical Center ("St. John"), filed suit on January 4, 2010, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq.* Plaintiff claims that while working

---

[1] The motion for injunctive relief is dispositive, and I must therefore proceed by Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). However, the motion to amend the complaint is non-dispositive, and I will therefore issue an order pursuant to 28 U.S.C. § 636(b)(1)(A). The parties are advised that in the future, separate motions must be filed when disparate relief is sought.

-1-

for Defendant, her "meal break" time was deducted from her salary regardless of whether she performed "compensable work" during the break. *Complaint* at ¶16. Plaintiff, filing a "Collective Action Complaint," alleges that the following categories of employees were also deprived of break time in violation of the FLSA: registered nurses, as well as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse technicians, trainers, and transcriptionists. *Id.*

Plaintiff alleges that staff members "are routinely required to stay at their duty post during their uncompensated 'meal breaks'" and Defendants "fail to ensure that unauthorized work is not being performed during employee 'meal breaks.'" *Id.* at ¶¶23, 25. She claims that although Defendants are aware that employees work through their breaks, they fail to compensate employees for the working through break time, "electing instead to accept the benefits of . . . uncompensated work." *Id.* at ¶29. Plaintiff alleges that she and her coworkers are routinely required to work without remuneration after they have "clocked out" for either break time or at the end of their shifts. *Id.* at ¶30. She alleges that although she worked over 40 hours a week, she was denied statutory overtime wages. *Id.* at ¶33. Plaintiff requests "all applicable statutory damages," as well as attorneys' fees, and injunctive relief.

Plaintiff's current motion states that since filing suit on January 4, 2010, she sustained a work-related injury requiring a medical leave of absence. *Plaintiff's Brief* at 1. She claims that during her medical leave, Defendants imposed a disciplinary suspension. *Id.* at 2. She states that she was not informed of the suspension until receiving a "Corrective Action Report" on May 7, 2010. *Id.* Plaintiff was informed that she was ineligible to apply for any position at the hospital and was given the choice of continuing the leave or resigning. *Id.* Noting that in her years of service that she had received only one other disciplinary report, Plaintiff asks for a temporary restraining order and preliminary injunction 1) expunging the "Corrective Action Report;" 2) reinstating her in her former position; 3) enjoining Defendants from any further acts of retaliation; 4) tolling the statute of limitations on the retaliation action to the date of the Report's expungement; and 5) requiring Defendants to post notice of the expungement as well as notice of the present lawsuit. *Id.* at 2. She also seeks to amend her complaint to include a count of retaliation under 29 U.S.C. §§ 215(a)(3) and 216(b). *Id.* at 3, 17-18.

## II. STANDARD OF REVIEW

In determining whether to grant a preliminary injunction, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v.*

*Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573.

A preliminary injunction is an extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.; Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). The level of proof required for the Plaintiff to obtain a preliminary injunction "is much more stringent than the proof required to survive a summary judgment motion." *Id.*

With respect to a motion for leave to file an amended complaint, Fed.R.Civ.P. 15(a) states that after a responsive pleading is filed, a complaint may be amended only by leave of the court, and that "leave shall be freely given when justice so requires." Motions to amend are addressed to the Court's discretion, and in deciding whether to allow an amendment, "the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. American Electric Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir.2001). Despite the general rule of liberality with which leave to file amended complaints is to be granted, the Sixth Circuit has held that when a proposed amended complaint would not survive a motion to dismiss, the court may properly deny the amendment. *Neighborhood Development Corp. v. Advisory*

*Council on Historic Preservation,* 632 F.2d 21, 23 (6th Cir.1980); *Thiokol Corporation v. Department of Treasury,* 987 F.2d 376 (6th Cir.1993).

### III. ANALYSIS
#### A. Injunctive Relief

Plaintiff asks that Defendants to be ordered to 1) expunge the Corrective Action Report created during her medical leave; 2) reinstate her in her former position; 3) refrain from any further acts of retaliation; 4) toll the statute of limitations on the retaliation action to the date of the Report's proposed expungement; and 5) require Defendants to post notice of both the present lawsuit and the expungement of the Report. *Plaintiff's Brief* at 2.

As an initial matter, the Court recommends denial of the request to toll the statute of limitations as premature. "The time for filing claims has not expired under the [applicable] statute of limitations period, and it is therefore premature to decide this issue." *Lima v. International Catastrophe Solutions, Inc.* 493 F.Supp.2d 793, 804 (E.D.La. 2007). Plaintiff's other requests are weighed pursuant to the four factors to be considered in whether to grant injunctive relief.

##### 1. Likelihood of Success on the Merits

"The anti-retaliation provision of FLSA provides that an employer is prohibited from 'discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted ... any proceeding under [the FLSA].'" *Adair v. Charter County of Wayne,* 452 F.3d 482, 489 (6th Cir. 2006)(*citing* 29 U.S.C. § 215(a)(3)).

"To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.*

Plaintiff's proposed amended complaint easily sets forth a prima facie case of retaliation. First, her January 4, 2010 filing of the present lawsuit, asserting her rights under the FLSA to overtime pay, was a protected activity. "The FLSA 'provides that employees must be compensated at one and one-half times their regular rate for overtime work.'" *Adair,* 452 F.3d at 486 (*citing Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 609 (6th Cir.1992); 29 U.S.C. § 207(a)).

As to the second prong, Defendants do not dispute that they were served on January 6, 2010, two days after the inception of the lawsuit (four days before the incident purportedly leading to Plaintiff's suspension). They submit however, that Plaintiff's direct supervisor, Kathryn Higgins, (the individual recommending suspension and termination) was not aware of the lawsuit until June 2, 2010. *Defendants' Exhibit B,* ¶5.

Kathryn Higgins' statement that she recommended disciplinary action before discovering that Plaintiff had filed a lawsuit against the hospital stands at odds with other evidence of record. Elsewhere in her affidavit, Higgins describes a February 9, 2010 telephone conversation with Plaintiff:

> "After explaining the parameters of her job protection, [Plaintiff] stated: 'Good, I was not planning on coming back. I was suing you for trying to fire me over the charge nurse situation. . . . Please fill my position. I would be fine with that.'"

*Id.* at ¶63. Higgins claims that as a result of this exchange, she filled Plaintiff's position. *Id.* at ¶82. Implausibly, however, she denies that Plaintiff's statement also placed her on notice that a lawsuit had been filed. *Id.* at ¶64. While Higgins states that she believed the "lawsuit" reference pertained to the January 10, 2010 incident (rather than hospital's failure to pay staff for overtime work), she admits that on the very same day as the telephone conversation, she "sent a memorandum to all staff regarding timekeeping measures." *Id.* at ¶41. Thus, there is, at a minimum, persuasive circumstantial evidence that Higgins was aware of this lawsuit.

As to the third prong of the retaliation test, Defendants do not contest that Plaintiff's choice of either continuing her unpaid leave or resigning was an "adverse action," but pursuant to the fourth prong, argue that she cannot show a causal connection between the filing of the lawsuit and the disciplinary investigation as a result of the January 10, 2010 incident. Citing *Hafford v. Seidner,* 183 F.3d 506 (6th Cir. 1999), Defendants argue that the temporal proximity of the lawsuit filing and the investigation "'without additional evidence of a retaliatory animus' is insufficient to establish causation." *Defendants' Brief* at 10.

As discussed above, Higgins' admission that she recommended disciplinary action subsequent to Plaintiff's statement that she "was suing" supports an inference that the investigation and loss of job was animated by retaliatory animus. Second, while Defendants

point out that a coworker involved in the same incident was also recommended for discipline, they acknowledge that, in fact, unlike Plaintiff, the coworker was not ultimately disciplined. *Defendants' Brief* at fn 4. Plaintiff also states that during an interview five days after the January 10, 2010 incident (11 days following the commencement of the law suit alleging that employees were not compensated for working through their lunch breaks) Higgins, allegedly "smirk[ing]," twice asked Plaintiff whether she had "taken [her] lunch break on the night in question." *Plaintiff's Exhibit A* at ¶21. Assuming the veracity of Plaintiff's statement and the fact that the investigation into alleged patient neglect appears to have been unrelated to whether Plaintiff had taken a break, the repeated "lunch break" comments by Higgins support the conclusion that the later disciplinary actions were taken in retaliation for filing a lawsuit.

Record evidence supports all four elements of a prima facie case of retaliation. Further, Plaintiff has provided support for her claim that Defendants' purported reasons for the adverse action were pretexual. Based on the information presently before this Court, and for purposes of this motion, Plaintiff has adequately met her burden of showing a "strong likelihood of success on the merits." *Overstreet, supra.*[2]

**2. Irreparable Harm**

In contrast, Plaintiff has not shown that she will suffer irreparable harm in the absence

---

[2] I recognize that the factual and legal landscape may change following discovery and briefing on dispositive motions.

of immediate injunctive relief. While Plaintiff seeks reinstatement, "[t]he fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay." *Overstreet,* 305 F.3d at 579 (*citing Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)).

Likewise, expunging the "Corrective Action Report" and enjoining "further" acts of retaliation (implying that she is entitled to relief as a matter of law) is premature given her failure to show irreparable harm. While the Court is mindful of the potential effect that Plaintiff's allegedly retaliatory termination would have on prospective co-plaintiffs, I note that as of now, the alleged FLSA violations against other staff members have been set forth in only a generalized fashion.

### 3. Harm to Others/ Public Interest

Given the possibility that Defendants might prevail at trial or that yet to be discovered evidence may support judgment as a matter of law, they would be prejudiced by being required to post a notice conceding fault in disciplining Plaintiff or aiding Plaintiff in disseminating notice of the lawsuit. Likewise, insofar as Defendant presents at least some evidence that Plaintiff's substandard work performance (rather than retaliatory animus) led to the action against her, injunctive relief in the form of reinstatement would be inappropriate at this time.

As to the request that Defendants be enjoined from further acts of retaliation, the law

is clear that injunctive relief should not issue where the claimed future damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003). At present, Plaintiff is not working at the hospital and would presumably not require such relief. Further, while she has stated a claim for retaliation on her own behalf, she has not yet shown a non-speculative basis for her belief that Defendants will commit acts of retaliation against other potential co-plaintiffs. While the Court has some concern about the chilling effect on other potential plaintiffs, the fact that this Plaintiff cannot show irreparable harm at present counsels against dramatic measures at this time, such as requiring Defendant to post a notice essentially conceding liability.

### B. The Motion to Amend

Plaintiff's motion for leave to amend the Complaint to add the count of retaliation under the FLSA is not futile, consistent with my findings in Section **A.1.** Plaintiff filed a request to amend the complaint less than one month after receiving the results of a disciplinary investigation. Defendants cannot show undue prejudice as a result granting the amendment. *Perkins v. American Electric Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir.2001). As such, Plaintiff will be allowed to amend the Complaint, and a separate order granting the motion to amend will be entered.

### IV. CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Temporary Restraining

Order and Preliminary Injunction [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *and Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

        S/R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: August 3, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 3, 2010.

        S/G. Wilson
        Judicial Assistant