UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORRINDA COOK,

    Plaintiff,

    v.

ST. JOHN HEALTH, et al,

    Defendants.

Civil No. 10-10016
Hon. Marianne O. Battani

## AMENDED OPINION AND ORDER ACCEPTING REPORT AND RECOMMENDATION [Dkt. 33] AND DENYING REQUEST FOR EXPEDITED DISCOVERY AND ORAL ARGUMENT

### I. INTRODUCTION

Before the Court is Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction; Plaintiff's request for expedited discovery; and Plaintiff's request for oral argument.

Plaintiff brought this case on behalf of herself and others similarly situated[1] pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et. seq.*, alleging unpaid overtime by her employer, Defendant St. John Hospital and Medical Center ("St. John"). This case was referred to United States Magistrate Judge R. Steven Whalen pursuant to 28 U.S.C. § 636(b)(1)(B). After a hearing on the motion, Magistrate Judge Whalen issued a Report and Recommendation ("Report") on August 3, 2010, in which he recommended to this Court that the Motion for TRO and Preliminary

---

[1] Plaintiff has stated her intention to seek class certification.

1

Injunction be denied. Plaintiff's request for expedited discovery was not addressed by the Report. Plaintiff timely filed objections to the Report's recommendations, and requested oral argument.

For the reasons set forth below, the Court adopts the Report's recommendations, and denies Plaintiff's Motion for TRO and Preliminary Injunction. Additionally, the Court denies Plaintiff's requests for expedited discovery and oral argument.

## II. FACTUAL BACKGROUND

Upon review of the record, the Court finds the facts to be as follows. Plaintiff is a registered nurse who has been employed by Defendant St. John since 2005.[2] On January 4, 2010, Plaintiff filed this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq.*, alleging that meal break time was automatically deducted from employee salary regardless of whether she and other similarly situated employees took their breaks, and despite the fact that hospital personnel frequently and knowingly required employees to work through their breaks. (Dkt. 1, Compl. ¶¶ 16-30.) Plaintiff has indicated that she intends seek class action certification. (*See, e.g.*, Dkt. 37, Stip. Am. Sched. Order.)

On January 10, 2010, Plaintiff was involved in an incident involving a patient that resulted in a hospital investigation and, ultimately, a disciplinary action being issued against her in the form of a May 7, 2010 Step 3 Corrective Action. Defendants' records, including documentation from interviews conducted with both Plaintiff and supervisory personnel, indicate that two registered nurses, one of whom was Plaintiff, left a patient unattended in a bathroom with mitts covering his hands such that he was unable to use the door to exit if he so wished. (Dkt. 25, Resp. to Mot. for

---

[2] Both parties appear to agree that Plaintiff is currently on a forced personal leave of absence and is unable to return to work at St. John. (*See* Dkt. 25, Ex. B, Higgins Aff. ¶ 82; Dkt. 19, Pl.'s Mot. for TRO & Prelim. Inj., Ex. A, Cook Aff. ¶¶ 44-45.)

TRO & Prelim. Inj., Ex. C at 1.)

Plaintiff contends that the investigation and the Corrective Action issued against her in response to the January 10 incident was pretext to retaliation in response to initiating this lawsuit. Specifically, Plaintiff argues that others involved in the incident were not punished, and that during interviews about the incident investigator Kathy Higgins mockingly made irrelevant reference to the contents of her lawsuit. However, contrary to Plaintiff's allegations, the record indicates that the other nurse involved in the incident was punished. (Dkt. 19, Pl.'s Mot. for TRO & Prelim. Inj. at 5; Higgins Aff. ¶¶ 8, 10.) Defendants claim that personnel conducting the investigation were unaware of Plaintiff's legal action pending against St. John, and remained so until June of 2010. The Court notes that if, as Defendants allege, the hospital employees conducting the investigation and responsible for recommending Plaintiff's punishment were unaware of Plaintiff's lawsuit at the time the investigation began in January, their own exhibits cast serious doubt as to whether such employees, Higgins in particular, *remained* unaware of the lawsuit as of February 9, 2010.[3]

Plaintiff's involvement in that same January 10 incident resulted in her injury, for which she took a non-Family Medical Leave Act (FMLA) leave of absence. According to hospital policy, an employee's position is not protected during this type of leave and may be filled in her absence, requiring the employee, upon return, to apply for other available positions. (Dkt. 25, Ex. F, Gloster Aff. ¶ 17.) Hospital policy renders any employee with a Step 3 Corrective Action–the type issued to Plaintiff–ineligible to transfer to another position. Thus, if Plaintiff's old position is no longer

---

[3]*See* Dkt. 25, Ex. B, Higgins Aff. ¶ 63 (indicating that Plaintiff made intimations of her lawsuit to Higgins in a February 9, 2010, phone conversation).

3

available, she is unable to apply to other available positions.[4]

Plaintiff alleges that a "climate of retaliation and coercion" has existed at St. John for years, and "is now being used by Defendants to intimidate employees and prevent them from asserting their legal rights or offering evidence in support of Plaintiff's claims." (Pl.'s Motion for TRO & Prelim. Inj. at 2.) Plaintiff further alleges that she was unaware that any disciplinary action was being issued against her until May 7, 2010. Soon after, on June 1, 2010, Plaintiff filed the present Motion for TRO and Preliminary Injunction.[5]

### III. PRELIMINARY INJUNCTION MOTION

**A. Standard of Review**

In deciding whether a preliminary injunction is appropriate, the Court looks to four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th

---

[4] Although Plaintiff alleges that she is currently unable to return to work, Defendants contend that she has neither informed St. John that she has been medically cleared to do so, nor requested to return. (Gloster Aff. ¶¶ 21-24.) Defendants further contend that instead of returning to work, Plaintiff was placed on a personal leave of absence that expired on April 30, 2010. (*Id*. ¶¶ 24-26.) Despite the fact that Plaintiff did not request to return to work, nor to extend her personal leave of absence, St. John "continues to treat Cook's continued absence as a Personal Leave of [A]bsence." (*Id.*)

[5] Plaintiff also sought leave to amend her complaint to add a claim under the anti-retaliation provisions of the FLSA, 29 U.S.C. §§ 215(a)(3) and 216(b), which Magistrate Judge Whalen granted. (Dkt. 34.)

4

Cir.1997) (en banc).  These four elements are "factors to be balanced, not prerequisites to be met." *Doe v. Cin-Lan, Inc.*, No. 08-12719, 2008 WL 4960170, at *5 (E.D. Mich. Nov. 20, 2008) (citation omitted).  A preliminary injunction is an "extraordinary remedy never awarded as of right," *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008), and should be granted "only if the movant carries his burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573.

> **B. Plaintiff's Objections to the Report's Findings on the Preliminary Injunction Standards**

Plaintiff's timely objections to the Report claim as follows:

(1) The Report erroneously concluded that Plaintiff would suffer no irreparable harm if the injunction were denied;

(2) The Report did not properly balance the preliminary injunction factors;

(3) The Report erroneously found that Defendants may be harmed if the TRO and preliminary injunction were granted; and

(4) The Plaintiff should be granted expedited discovery rather than denied all requested relief.

Plaintiffs are entitled to this Court's "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1).  *See U.S. v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *U.S. v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *U.S. v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981). Plaintiff's objections must be calculated to "provide the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).  A "general objection . . . that does nothing more

5

than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.* Upon review of the objections, this Court is required to "re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part." *Id.*

The Court will address each of Plaintiff's objections in turn.

### 1. Likelihood of Irreparable Harm

#### (a) Chilling Effect

Plaintff argues that the Report wrongly found that she had failed to demonstrate a showing of irreparable harm in the absence of injunctive relief. Plaintiff's Motion for Preliminary Injunction argued that the alleged retaliatory actions taken against her by her employer created a chilling effect that might prevent employees from opting-in to her proposed class action, as well as dampen the willingness to cooperate of potential witnesses. Plaintiff relies heavily upon *EEOC v. Anchor Hocking Corp.*, 666 F.2d 1037 (6th Cir. 1981), which does contain language to the effect that the EEOC may be able to demonstrate irreparable harm by showing that the alleged retaliation might have a chilling effect upon employee cooperation with its investigation. *Id.* At 1043-1044. However, this is clearly dictum as the Court of Appeals held that statutory remedies of reinstatement and back pay would adequately redress the injury if the retaliation claim was successful.[6] *Id.* at 1044. Furthermore, *EEOC* "was at best unclear as to whether a chilling effect could *ever* qualify

---

[6]The court affirmed the district court's finding that testimony from five employees, each of whom testified that he would be hesitant to cooperate with the EEOC because of fear of retaliation, was "speculative," and "that the Commission needed to show that its investigation was actually being obstructed before preliminary relief would be warranted." *EEOC*, 666 F.2d at 1040.

as irreparable harm to a private plaintiff" in the Sixth Circuit. *Doe*, 2008 WL 4960170, at *20 (emphasis in the original).

Even if this Court were to adopt a chilling effect standard of irreparable harm, Plaintiff has failed to demonstrate that such a chilling effect has occurred here. In her Motion for Preliminary Injunction, Plaintiff referred to "the climate of fear created by Defendants' high profile retaliatory actions," but failed to provide any evidence in support of this claim. At best, Plaintiff has offered to bolster the record by submitting "an affidavit from an individual who says he's aware of nurses who say they're concerned because of what they heard about Dorinda." (Mot. Hr'g before Mag. J. Whalen.)

It is well established that the mere possibility of harm does not warrant the issuance of a preliminary injunction. *Winter v. Natural Resources Defense Counsel*, 129 S. Ct. 365, 375. As articulated in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be rewarded upon a clear showing that plaintiff is entitled to such relief." *Id.* at 375-376. Plaintiff has not demonstrated anything beyond mere speculation as to whether irreparable harm will occur if the requested relief is denied. *See NACCO Materials Users, Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x. 929, 943 (6th Cir. 2007) (a party must show that irreparable harm is both "certain and immediate, rather than speculative or theoretical to satisfy its burden to receive preliminary injunction relief") (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F. 2d 150, 154 (6th Cir. 1991). Specifically, Plaintiff has not demonstrated that potential class members or witnesses have (1) knowledge of the alleged retaliatory actions taken against her, and (2) have actually been chilled from participating in any manner in the lawsuit as

7

### (b) Loss of employment

Plaintiff additionally argues that, "Given the current economic environment, one would be hard pressed to argue that a nurse of 38 years would not be subjected to individual harm by losing her job." (Pl.'s Reply Mem. In Supp. Of Pl.'s Mot. For Prelim. Inj. at 9-10.) The Court understands the hardships Plaintiff faces under these circumstances. Nevertheless, a party moving for a preliminary injunction must establish more than mere monetary injury. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974). The loss of income, even for an extended period of time, does not amount to irreparable harm, as "income wrongly withheld may be recovered through monetary damages in the form of back pay." *Doe*, 2008 WL 4960170, at *19 (quoting *Overstreet*, 305 F.3d at 579); *see also Sampson*, 415 U.S. at 90.

### (c) Requisite Showing of Irreparable Harm

Finally, Plaintiff argues that because the Report found a strong likelihood of success on the merits, "very little showing is required to satisfy" the irreparable harm factor. (Pl.'s Objs. to R. at 5.) Plaintiff cites *Northeast Ohio Coalition* for the proposition that "[t]he probability of success that must be demonstrated [in a motion for preliminary injunction] is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." 467 F.3d 999, 1009 (6th Cir. 2006).

While this Circuit has repeatedly asserted that the four preliminary injunction factors are "factors to be balanced, not prerequisites to be met," *see, e.g.*, *In re DeLorean Motor Co.*, 755 F.2d 1223, 1129 (6th Cir. 1985), it remains that the hallmark of injunctive relief is irreparable harm.

Furthermore, this Circuit has repeatedly held that a strong showing of likelihood of success on the merits, without likelihood of irreparable harm, is not sufficient to warrant granting injunctive relief. The Sixth Circuit Court of Appeals has stated:

> Whatever the merits of the . . . "balance of hardships" test may be, the purpose of the test is surely not to eliminate the irreparable harm requirement. Rather, the purpose of the test is to underscore the flexibility which traditionally has characterized the law of equity. It permits the district court, in its discretion, to grant a preliminary injunction even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued. Thus, the alternate test does not remove the irreparable harm requirement. Instead, it merely demonstrates that in general, the likelihood of success that need be shown (for a preliminary injunction) will vary inversely with the degree of injury the plaintiff will suffer absent an injunction.[7,8]

*Friendship Materials Inc., v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). *See also Winter*, 129 S.Ct. at 375 ("plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is likely in the absence of an injunction"); *Sampson*, 415 U.S. at 88 ("The basis of injunctive relief in federal courts has always been irreparable harm and inadequacy of legal remedies"); *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he

---

[7] Further, tracing Plaintiff's cited quotation in *Northeast Ohio* to its original source, *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991), the Court finds that it, too, originally stood for the proposition that a strong showing of irreparable harm lessened the Plaintiff's burden on the likelihood of success factor, but did not actually state or infer the inverse to be true. *Id.* at 153-154.

[8] The "balance of hardships" test referred to in *Friendship* involved a weighing of harms likely to be suffered by the movant absent a preliminary injunction, against the harm an injunction would cause the defendant. Though Plaintiff does not propose this test be applied here, the standard articulated in *Friendship* remains nonetheless applicable to any balancing of the four preliminary injunction factors by a court in this Circuit.

demonstration of some irreparable injury is the *sine qua non* for issuance of an injunction."). Thus, Plaintiff is required to establish a likelihood of irreparable harm despite the Report's finding that she has demonstrated a strong likelihood of success on the merits.

### (d) Conclusion

As the Court finds each of Plaintiff's arguments as to whether she has adequately demonstrated a likelihood of irreparable harm to be without merit, Plaintiff's objection is overruled.

### 2. Balancing of the Preliminary Injunction Factors

Plaintiff argues that the Report "did not give appropriate weight to its finding that Plaintiff has a substantial likelihood of success on the merits." (Dkt. 36, Pl.'s Objs. to R. at 3.) Specifically, Plaintiff contends that because the Report found likelihood of success on the merits, she should have been held to a "lesser showing on the other preliminary injunction factors." (*Id.* at 5.) As discussed above, Plaintiff is required to show a likelihood of irreparable harm in the absence of injunctive relief and has failed to do so. This alone suffices for the Court to conclude that a preliminary injunction is inappropriate here. Furthermore, the Court has adequately addressed Plaintiff's concerns regarding the balancing of the pertinent factors above. It is therefore unnecessary to address this objection in further detail.

Plaintiff's objection is overruled.

### 3. Harm to Defendants

Plaintiff objects to the Report's finding that Defendants would be harmed if they were forced to expunge the disciplinary report, reinstate Plaintiff to her position, and disseminate the requested "corrective notice." Each requested relief will be addressed in turn.

### (a) Expunging the May 7, 2010 Corrective Action

Plaintiff argues that Defendants should be forced to remove the Step 3 Corrective Action issued against her because doing so would simply allow Plaintiff to return to work, and would not cause harm to Defendants. She infers that the Step 3 Corrective Action is a mere procedural hurdle fabricated by the hospital to prevent her returning to work. However, the record suggests that the hospital may have had legitimate reasons for disciplining Plaintiff. Furthermore, the Corrective Action serves as an important hospital business record, documenting hospital response to an employee's alleged violation of hospital policy against an admitted patient. It is not within the province of the Court to act as a "super personnel department," overseeing and second guessing employers' business decisions. *See, e.g.*, *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 399 (6th Cir. 2009) (internal citation and quotation marks omitted); *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006); *Mohr v. Best Buy Stores, L.P.*, 547 F. Supp. 2d 783, 789 (N.D. Ohio 2008). To grant Plaintiff's request would amount to an insertion of the Court's judgment as to the veracity of the allegations against the Plaintiff and the propriety of Defendants' disciplinary action, and would be premature without a showing that the disciplinary action was purely pretextual, a burden Plaintiff has not yet borne.

### (b) Reinstating Plaintiff to Her Position

In her initial Motion for TRO and Preliminary Injunction, Plaintiff requested that she be reinstated to the position she vacated when she took medical leave. In her objections to the Report, Plaintiff claims that she is only requesting to be allowed to reapply to the hospital for any number of available positions. The Report found that insofar as Defendants have presented evidence of Plaintiff's violation of hospital policy, reinstatement would not be appropriate at this

time. This Court agrees. Ordering the hospital to reinstate a disciplined employee, contrary to hospital policy, and prior to a determination of the retaliation claim on its merits, would be both premature and harmful to the defendants at this time.[9]

### (c) Dissemination of a Corrective Notice

In her initial Motion for TRO and Preliminary Injunction, Plaintiff requests that Defendants be ordered to

> disseminate (in person, by posting in the workplace, by phone and by mail), to all of Defendants' employees, a Corrective Notice informing them: of the existence of this lawsuit; that Defendants' disciplinary action against Plaintiff was retaliatory and unlawful; that Defendants' employees have a right to join this lawsuit or provide testimony or other evidence in support of this lawsuit free from any kind of retaliation by Defendants; and that such notice include information about what constitutes retaliation, as well as a statement that retaliation is unlawful and that anyone retaliated against has a legal claim for injunctive and monetary relief; and that the Court has taken action to preserve the claim of potential claimants from January 10, 2010 to the date of such Corrective Notice.

(Pl.'s Mot. for TRO & Prelim. Inj. at 2.) Later, in her objections to the Report, Plaintiff states that she would agree to a notice that "could simply state that liability is contested but that no employees will be retaliated against by coming forward to assert their rights under the FLSA." (Pl.'s Objs. to R. at 7-8).

As to Plaintiff's initial request, the Court holds that Defendants would clearly be harmed by being forced to concede fault to all of its employees before this case is settled or decided on its merits. As to her second, Plaintiff has failed to provide evidence that Defendants have

---

[9]Furthermore, as discussed in footnote 5, Plaintiff has not presented evidence that she has actually attempted to return to her previous position and been denied.

retaliated or even threatened to retaliate against other employees.[10] Because injunctive relief is inappropriate "when the alleged injury is speculative or may never occur," *Sharpe v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir.1998)), Plaintiff's request must be denied.

## IV. REQUEST FOR EXPEDITED DISCOVERY

Plaintiff requests that the Court grant her leave to conduct expedited discovery in the alternative to denying her requested relief. Plaintiff cites as support two cases in which courts in this Circuit have granted requests for expedited discovery pursuant to a party's motion for preliminary injunction. In the first, expedited discovery was requested and granted in anticipation of, and as preparation for, an upcoming preliminary injunction hearing. *Russell v. Lumpkin*, No. 10-00314, 2010 WL 1882139, at *1 (S.D. Ohio May 11, 2010). In the second, the court granted expedited discovery after an in-chambers conference regarding the motion, but did so only in light of *new* and *timely* allegations of the defendant's illegal behavior. *Hausser + Taylor LLC v. RSM McGladrey, Inc.*, No. 07-2832, 2007 WL 2778659, at *3 (N.D. Ohio Sept. 21, 2007). No such extenuating circumstances warrant granting Plaintiff's request in this instance. Plaintiff had the opportunity to file a discovery request between filing her motion on June 1, 2010, and the hearing on the motion held by Magistrate Judge Whalen on June 15, 2010. Both parties have presented this court with numerous pleadings on the Motion, and both had the

---

[10]Plaintiff relies upon *Bowman v. New Vision Telecommunications*, Inc.*,* No. 09-1115, 2009 WL 5031315 (M.D. Tenn. Dec. 14, 2009). It is true that the *Bowman* court granted the plaintiffs' request for a TRO requiring defendants to post a notice stating that no retaliatory action would be taken against any individual for exercising his or her rights under the FLSA. However, the court did so only after blatant retaliatory actions had been taken against the plaintiffs after filing their lawsuit. *See id.* at *2-3.

13

opportunity to present evidence to Magistrate Judge Whalen during the hearing.

This Court has fully reviewed and considered the entire record before it in issuing this order. It would be an unwieldy and undesirable application of resources to allow parties leave to gather more evidence to meet their burden when, upon a court's complete review and analysis of the record, it is found that they have failed to do so.

## V. REQUEST FOR ORAL ARGUMENT

The Court finds that oral arguments on its decision to adopt the Report are unnecessary, and denies Plaintiffs request accordingly. *See* E.D. Mich. L.R. 7.1(f)(2).

## VI. CONCLUSION

For the reasons set forth above, and having thoroughly reviewed the Report, Plaintiffs' Objections, and Defendant's Response, the Court agrees with Magistrate Judge Whalen's conclusion that the Plaintiff's Motion for TRO and Preliminary Injunction be denied. Accordingly, the Court OVERRULES Plaintiffs' Objections, and ADOPTS Magistrate Judge Whalen's recommendation to deny Plaintiff's Motion for TRO and Preliminary Injunction.

Additionally, the Court DENIES Plaintiff's request for expedited discovery and oral argument.

**IT IS SO ORDERED.**

Date: October 27, 2010                     s/Marianne O. Battani

                                           United States District Judge

> Proof of Service
>
> I hereby certify that the foregoing order was served on the attorneys/parties of record on October 27, 2010, by U.S. first class mail or electronic means.
>
>                               s/Bernadette M. Thebolt
>                               Case Manager