## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DORRINDA COOK, an individual, on behalf of
herself and others similarly situated,

        CASE NO. 10-10016

     Plaintiff,

        HON. MARIANNE O. BATTANI

v.

ST. JOHN HEALTH, ST. JOHN HOSPITAL AND
MEDICAL CENTER, and DOES 1 through 10,

     Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendants' Motion for Summary Judgment (Doc. No. 124). The Court heard oral argument on April 11, 2013, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the Court **GRANTS** the motion.

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Dorrinda Cook brings this case on behalf of herself and others similarly situated pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.* She alleges Defendants violated the Act by failing to pay employees for all hours worked. More specifically, Cook claims that meal break time was automatically deducted from employee salary regardless of whether the break was taken, and despite the fact that hospital personnel frequently and knowingly required employees to work through their breaks. She amended her complaint on August 10, 2010, to add a claim of retaliation. (Doc. 1, Compl. ¶¶ 16-30.)

Defendant Saint John Providence Health System ("SJPHS") encompasses a network of eight hospitals and numerous outpatient centers, including St. John Hospital & Medical Center (" St. John Hospital") in Detroit, St. John Hospital & Medical Center-North Shores Campus in Harrison Township (closed in October 2010), St. John Macomb-Oakland Hospital, River District Hospital in East China, Providence Hospital in Southfield, Providence Part Hospital in Novi, Brighton Hospital, Father Murray Nursing Center in Center Line (sold in June 2011), St. John Senior Community in Detroit (sold in January 2011), St. John Home Care in Clinton Township, Eastwood Clinics (various locations), Medical Resource Group (physician practices), and St. John Health Investment Corporation. Cook worked the midnight shift at four of these facilities–St. John Detroit Riverview Hospital, Father Murray Nursing Center, St. John Macomb-Oakland Hospital, Macomb Center, and St. John Hospital.

At the time she filed her suit, on January 4, 2010, Cook was a registered nurse who has been employed by SJPHS since 2005. Plaintiff asserts that she regularly worked during her meal breaks, yet pursuant to policy, because she worked over six hours, an automatic meal break of thirty minutes was deducted.

Defendant's Policy Guideline No. 360, "Meal Periods and Rest Breaks," reads in relevant part as follows:

> 7. When a meal period is foregone, the associate must be compensated and time worked counted toward the calculation of overtime if the following conditions exist:
>
> • The associate continues to work through the meal period.
>
> • The associate eats his/her meal but remains at his/her work station and continues work, i.e., performing some job duties, attends department meeting, etc.
>
> • The associate is interrupted during meal period, and must return to his/her work station.

> • The associate must have an uninterrupted meal period of more than 20 minutes to prevent a compensable situation.
>
> 8. It is the associate's responsibility to notify his/her manager when meals periods are missed or interrupted.

(Doc. No. 124, Ex. 2).

Defendant uses Kronos timekeeping system to track hours worked by nonexempt employees. The system automatically subtracts 30 minutes from an employee's shift (in excess of six hours) to account for the unpaid meal period. (Doc. No. 124, Ex. 3 at 108). At the end of a two-week pay period, an employee's time is reviewed and approved by a timekeeper or manager. For a correction to occur, an employee has to note on the "exception log" that a correction has to be made.

Plaintiff filed for Chapter 13 bankruptcy on November 6, 2008, before she filed this lawsuit. During the course of bankruptcy proceedings, Plaintiff completed certain schedules that are part of the process, including a Schedule B Personal Property, wherein Cook indicated that she had "no contingent and unliquidated claims of any nature." (Doc. No. 124, Ex. 10 at p. 8). Cook signed Schedule B under penalty of perjury on November 4, 2008, that the information provided was true and correct. (Doc. No. 124, Ex. 10 at pp. 3, 19). Because Plaintiff's bankruptcy is ongoing, she is required to notify the bankruptcy court of any material changes affecting the value of her estate. 11 U.S.C. § 541 (a)(7). In addition, Cook agreed to inform her bankruptcy attorney "immediately" of any material changes. (Doc. No. 124, Ex. 10 at 31).

After she filed her petition, Cook did report changes to her financial condition. She filed papers to modify her Chapter 13 payment plan on three occasions. First in April 2010, she amended her income and expense schedules to declare certain workers' compensation

3

benefits she began receiving. At that time, she confirmed that she had no claims that would affect the value of her bankruptcy estate. (Doc. No. 124, Ex. 11 at 1). In July 2010, Plaintiff amended her income and expense schedules to declare she had stopped receiving workers' compensation benefits and had returned to work. Again she confirmed that she had no claims that would affect the value of her bankruptcy estate. (Doc. No. 124, Ex. 13 at 1). Finally, in June 2012, Cook amended her income and expense schedules to reflect her son's education expenses. Again she confirmed that she had no claims that would affect the value of her bankruptcy estate. (Doc. No. 124, Ex. 15 at 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. ANALYSIS

Defendants move for summary judgment on several grounds: Plaintiff's FLSA claim is barred by judicial estoppel; she lacks standing; and she failed to show the existence of a genuine dispute as to whether she worked without being paid for all of her hours. Because the Court agrees that the FLSA claim should be barred, it limits its discussion to that issue.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n. 8 (2000). Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (quotation omitted).

The Supreme Court has identified several factors to consider in deciding whether to apply the doctrine, two of which have been applied in the bankruptcy context. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). First, there must be a "clear inconsistency" between the later and earlier position. Id. Second, the court must have been persuaded to accept the earlier position, "so that judicial acceptance of an inconsistent position in a later proceedings would create 'the perception that either the first or the second court was misled.'" Id. (citations omitted). These factors, however, are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751. Notably, in Browning, the Sixth Circuit observed that it is well-settled that judicial estoppel does not apply where the prior inconsistent position occurred because of "mistake or inadvertence." Id. at 776; See also New Hampshire, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.") (internal quotation omitted). The Court therefore considers how the facts of this case should be assessed under the applicable standards.

### A. Does this lawsuit conflict with representations to the bankruptcy court?

The Sixth Circuit has recognized that "pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." Lewis v. Weyerhaeuser Co., 141 F. App'x 420, 425 (6th Cir. 2005). In Lewis, the plaintiff did not list an employment discrimination claim in her Chapter 13 bankruptcy petition, either in the "Statement of Financial Affairs" section or in the "Schedule B--Personal Property" section, which required her to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Id. at 422. After the bankruptcy court approved her bankruptcy plan, the plaintiff initiated her employment discrimination claim by sending a letter to the EEOC. Based on those facts and circumstances, the court concluded "pursuit of her current discrimination action is without question 'contrary to' her sworn bankruptcy petition" for purposes of the judicial estoppel analysis. Id. at 425.

Similarly, here, Cook failed to add her claims against Defendants in her Chapter 13 petition. Moreover, she amended the petition on three occasions, yet never amended her Schedule B. The Court finds the facts in this case support the conclusion that Cook asserted a contrary position in her bankruptcy petition.

### B. Was the omission inadvertent?

To determine whether Cook's omission was inadvertent, the Court looks at two factors endorsed by the Browning court; specifically, whether (1) "the debtor lacks the knowledge of the factual basis of the undisclosed claims," and (2) whether "the debtor has [a] motive for concealment." 283 F.3d at 776 (citing In re Coastal Plains, Inc., 179 F.3d

6

197, 210 (5th Cir. 1999)).

Without question, Cook did not know of the factual basis for her FLSA action when she filed her petition. She did, however, know about it each of the three times she amended her petition. Further, Cook had a motive to conceal her claims. "It is always in a Chapter 13 petitioner's interest to minimize income and assets." Lewis (citing Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002)).

Indeed, Defendants raised this issue on November 29, 2012, when they filed their Motion for Summary Judgment. Plaintiff did not rush to correct her omission. Not until April 11, 2012, did Plaintiff file a Notice of Related Event in this case, notifying the Court that she filed an Amended Schedule B identifying her claims in this action as contingent claims on March 26, 2013. Her delay speaks louder to this Court than her amendment. As noted in Burnes, 291 F.3d at 1288,

> The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [a plaintiff] to amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

Cook's amendment came almost four months after Defendants moved for summary judgment. Moreover, she has offered no explanation for her omission.

The Sixth Circuit, in Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 895 (6th Cir. 2004) (reversing the lower court's use of judicial estoppel to bar the plaintiffs' claims, which they omitted from their bankruptcy petition), articulated the manner in which the lower courts should consider the absence of bad faith. The court focused on several

7

circumstances, which demonstrated that the plaintiffs in that case had not hidden their claim. First, the plaintiffs had notified the bankruptcy trustee of the claim during a meeting, and the trustee requested all of the documents regarding the claim. Second, the plaintiffs had asked the trustee repeatedly whether he intended to pursue the claim on behalf of the estate. Third, the plaintiffs sought a status conference on the issue of the lender liability claim. Fourth, the plaintiffs moved, albeit unsuccessfully, to allow substitution of the trustee in the lender liability action. Fifth, the plaintiffs had filed an amendment to their original bankruptcy petition adding the lender liability action after the defendant moved for dismissal on the ground of judicial estoppel. See id. at 895-97.

The appellate court held that although the plaintiffs had knowledge of the potential lender liability claim during the pendency of the bankruptcy proceeding, their conduct demonstrated the failure to include the contingent claim was in good faith. In contrast to the Eubanks plaintiffs' "constant affirmative" efforts to inform the trustee and the bankruptcy court of the claim, id. at 899 & n. 3, here, Cook concealed her claims and took no action to reveal them to the trustee or the bankruptcy court. Consequently, the equitable principles governing judicial estoppel support its application. Although the result is harsh, the Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). A legal claim or cause of action is an asset that must be listed under § 521(1), and "[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir.1999) (citation omitted). "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be

overemphasized." Id. Accord Currithers v. FedEx. Ground Package Sys, Inc., No. 04-10055, 2012 WL 380146 at (E.D. Mich. Feb 6, 2012) (finding the plaintiff's failure to disclose his FLSA claim, which arose after he filed his Chapter 13 petition, when he amended his plan was not inadvertent, and that the plaintiff was required to report the claim once he knew about them even if he thought they were immaterial).

### C. Bankruptcy court's adoption of prior position

The bankruptcy court has adopted Cook's representation repeatedly during the course of its proceedings. It has ordered payments from the bankruptcy estate on multiple occasions. "When a bankruptcy court--which must protect the interests of all creditors--approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position," the criteria is met. White v. Wyndham Vacation Ownership, inc. 617 F.3d 472, 478 (6th Cir. 2010). As recently as October 2012, the bankruptcy court issued payment orders and awards to be paid from the estate, and did so in reliance upon Cook's schedules and disclosures. Accordingly, the Court finds all of the factors supporting the use of judicial estoppel are met.

Lastly, the Court rejects Plaintiff's assertion that Defendants waived judicial estoppel as a defense because it was not identified in the Answer. Although the Sixth Circuit has recognized that "[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." see Horton v. Potter, 369 F.3d 906, 911-12 (6th Cir. 2004), the appellate court also has held that, when a plaintiff has notice "of an [unpled] affirmative defense by some means other than pleadings," the lack of compliance with "Rule 8(c) does not cause the plaintiff any prejudice." Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir.1993)

9

(internal quotation omitted). Therefore, the defense is not waived. Id.

There is no dispute that Cook should have been aware of the defense during the course of litigation. Specifically, at her 2010 deposition, Cook was asked whether she had ever filed bankruptcy. Consequently, she has not been prejudiced by Defendants' failure to include judicial estoppel as an affirmative defense it in their Answer. See Thompson v. Davidson Transit Org., 725 F. Supp. 2d 701, 710 (M.D. Tenn. 2010) (holding that it is "the plaintiff's responsibility to identify this cause of action on the bankruptcy petition, with or without the defendant's assistance"). Finally, the Court observes that the doctrine exists to protect the integrity of the court. The purpose trumps any complaint of waiver advanced by Plaintiff.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion is **GRANTED**.

    **IT IS SO ORDERED.**

                                          s/Marianne O. Batani
                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

Date: May 29, 2013

### CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                          s/Bernadette M. Thebolt
                                          Case Manager